## Chicago Title & Trust Co. v. Joseph Brugger.

1. NOTICE—*When an Indorsement on Collateral is Notice of Ownership.*—Where A, the owner of a note and trust deed, which has indorsement thereon that A is the holder of a note secured by trust deed, placed them in the hands of an agent to collect the interest and the agent deposited them as collateral security, *it was held* that the indorsement was notice to the pledgee of the ownership of A.

Foreclosure of a Trust Deed.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed June 10, 1901.

This suit was brought by bill in chancery by the Chicago Title & Trust Company, appellant, to foreclose a trust deed to Theodore H. Schintz, trustee, dated November 1, 1893, executed by Johan G. Gmeiner and Anna Gmeiner, his wife.

Gmeiner and wife made no defense and were defaulted, but appellee, Joseph Brugger, who was made a defendant as claiming interest in the mortgaged premises, appeared and by answer and cross-bill claimed to be the owner of the trust deed and the notes secured thereby. The controversy was not between mortgagor and mortgagee, but between two parties each of whom claimed to be the owner of the trust deed and the notes. The master to whom the cause was referred found the equities with the complainant, Chicago Title & Trust Company, but the Superior Court sustained the exceptions of cross-complainant Brugger, decreed a foreclosure of the trust deed in his favor and dismissed complainant's bill for want of equity.

The Gmeiner trust deed, dated November 1, 1893, conveyed lots 33, 34 and 35 in block 8, etc., and was given to secure a promissory note of even date for $3,000, executed by Gmeiner, payable to the order of himself two years after date, and by him indorsed in blank. This note was given by Gmeiner to evidence an indebtedness to appellee, Brugger, and the note was, when made, delivered to Brugger.

Brugger went to Europe in 1895, and upon leaving Chicago he left the note and trust deed with Schintz, the trustee. Schintz was conducting a real estate mortgage and loan business in connection with his law business. He bought and sold mortgage securities from time to time, and also used them as collateral upon which to borrow money from the Chicago Title & Trust Company. In the year 1895 Schintz was indebted to the Chicago Title & Trust Company in the sum of $50,000 for borrowed money, for which the company held, as collateral, mortgage securities belonging to Schintz. At the time Schintz borrowed this money it was agreed between him and the company that he might substitute collateral for any which he might desire to withdraw from time to time. This right to substitute collateral he frequently exercised. In December, 1895, he offered the Gmeiner trust deed and notes to the appellant company in substitution of other securities, and accompanied his request with the following letter:

"Chicago, Dec. 9th, 1895.

Henry W. Leman, 2d V. P.

Dear Sir: Please accept this Johan Gebhard Gmeiner $3,000 trust deed in place of Thomas Ravlatke $3,000 collateral, and oblige,

Yours truly,

Theo. H. Schintz."

Subsequently he withdrew the Gmeiner trust deed and notes and substituted others. Later on, January 4, 1897, he again placed the Gmeiner trust deed and notes with the trust company in substitution of other collateral. Some time afterward they were again withdrawn. On July 12, 1897, being still indebted to the trust company, he for the third time delivered the Gmeiner securities to the appel-

lant as collateral, and the latter has had possession of them at all times since that date. Some weeks after appellant last came into possession of the Gmeiner papers Schintz failed in business, indebted to the trust company and other creditors. This indebtedness was never paid, and the trust company being obliged to resort to its collateral security, filed its bill to foreclose the Gmeiner trust deed.

The substitution of the Gmeiner trust deed and notes upon the three occasions mentioned was effected by Mr. Niblack, secretary of the Chicago Title & Trust Company, and Mr. Schintz, and in each instance was accompanied by the written request of Schintz in his own handwriting. The first time the Gmeiner papers were presented by Schintz as collateral, that is, on December 9, 1895, there was attached to the principal note, which was indorsed in blank, an extension agreement dated June 14, 1895, signed by Gmeiner and wife only, extending the time of payment three years from November 1, 1895. The principal note was by its terms not due until November 1, 1895. The extension of the principal note was further evidenced by six interest notes dated June 14, 1895, each for the sum of $105, executed by Gmeiner, payable at intervals of six months to the order of himself and by him indorsed in blank.

These Gmeiner papers, consisting of the principal note for $3,000, indorsed in blank by Gmeiner, with the extension agreement attached, the trust deed securing it, and the interest notes, were first offered to Mr. Niblack, representing appellant, by Schintz on the 9th day of December, 1895, as collateral in substitution of other collateral, as before stated. Mr. Niblack examined the Gmeiner papers and found the following indorsed in the handwriting of Schintz on the back of the trust deed, viz.: "Lots 33 and 34 described within, released by release deed dated June 12, 1895, by order of Joseph Brugger, holder of note secured by this trust deed. Theo. H. Schintz, trustee." Upon the back of the note was written: "Lots 33 and 34 described in trust deed securing this note, released by release deed dated June 12, 1895, by order of Joseph Brugger, holder of this

note. Theo. H. Schintz, trustee." Mr. Niblack asked Schintz what the indorsement meant, why it had been made, and how much security was left, and then remarked : " It seems to belong to somebody else." Schintz answered that he was the owner of the principal note and trust deed; that it was a loan which he had once sold and that he repurchased it and renewed it; that the security was ample and that he would soon sell it again. Mr. Niblack testified that he and Schintz talked about Brugger's interest in the note, and that Schintz told him (Niblack) that he had originally sold the paper to Brugger; that when it became due Brugger did not want to carry it any longer, and that he (Schintz) had repurchased it before maturity, renewed it, and was waiting to sell it again. Mr. Niblack further stated that at that time he had confidence in Schintz; that the latter was engaged in the mortgage loan business, buying and selling mortgages, and that he (Niblack) did not know that any person besides Schintz had or claimed to have any interest in either the principal note or the interest notes and trust deed, but on the contrary believed that Schintz was telling the truth and was the owner of them. Believing at all times from Schintz's statement that he was the owner of the principal note and the trust deed, no inquiry was made of him the last time he placed them in appellant's possession, and not until after Schintz had failed in business and appellant was about to file a bill to foreclose the Gmeiner trust deed did appellant learn that Brugger was the owner of the paper. Upon the filing of this bill to foreclose, Brugger, who was then living in Europe, set up by answer and cross-bill his ownership of the trust deed and notes.

It appears from Brugger's testimony that he resided in Chicago from 1880 to the latter part of June, 1895, and that he was originally the owner of the Gmeiner trust deed and the principal note, and that he retained them in his possession for about one year. In June, 1895, Brugger left Chicago and took up his residence in Austria, where he has continued to reside ever since. Before leaving Chicago he

deposited with Schintz the trust deed and the principal and interest notes, for the purpose of having them safely kept and the interest collected and forwarded to him.    He states further that prior to his departure for Europe in June,1895, the principal note due November 1, 1895, had been extended for three years from the first day of November, 1895, and interest notes of $105 each given, evidencing said extension. Gmeiner testified that he and his wife signed the extension agreement at Mr. Schintz's office; that Mr. Brugger told him a few days before he signed it that he should have the extension for nothing, and told him to go down to Schintz's office and sign it; that after he signed the extension agreement Brugger told him to leave the papers with Schintz and to pay the interest to Schintz and that Schintz would send the money to him.

From the decree of the Superior Court ordering a foreclosure in favor of appellee, Brugger, and dismissing appellant's bill for want of equity, the appeal is here brought by appellant.

PADDOCK & BILLINGS, attorneys for appellant.

RUBENS, DUPUY & FISCHER, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

There is but one question presented which it is necessary to consider in the determination of this appeal, viz. :    Did appellant, when it took the note and trust deed in question as collateral security, have notice of the fact that appellee, Brugger, had an interest in the note and trust deed as owner?    There is considerable argument in the briefs of counsel as to the force of the extension agreement and as to the rights of one who buys commercial paper after its maturity from one who is unlawfully in possession of it. But this argument becomes of no importance if it be determined that when appellant took the note in question it was chargeable with notice of Brugger's ownership of the same. For whatever may be said of the rights of a purchaser of overdue commercial paper, who buys from one who has

stolen the paper, when such purchaser has no notice of the vendor's lack of title, there can be no doubt at all as to the proposition that one who buys commercial paper from one who has stolen it with notice of the true ownership, is not protected in his purchase as against the owner. There was indorsed upon the note and trust deed here in question the plain and unmistakable statement that appellee, Brugger, was the "holder of this note" secured by the trust deed. It is difficult to see how that indorsement could fail to inform the officers and agents of appellant, who were transacting the business for appellant, that Brugger was the one who owned the paper. As a matter of fact, disclosed by the record, it did convey precisely that information to Mr. Niblack, who, upon seeing it, said, "It seems to belong to somebody else." And, as a further fact, also disclosed by the record, Mr. Niblack, acting for the appellant, disregarded this notice of Brugger's ownership because he had confidence in the assurance of Schintz that he had repurchased the paper. Mr. Niblack testified:

"He (Schintz) explained that he had released two lots; that the house and security was on the remaining lot; that he had sold the loan, repurchased it, and had renewed it and was to sell again. I did not ask particularly about Brugger's ownership of it. I took his (Schintz') word for it. It was a perfect explanation. I made no inquiry from any one else except Schintz. Never asked Brugger nor made any attempt to find him. Did not ask Gmeiner or attempt to find him."

When appellant, thus charged with notice of Brugger's ownership, chose to disregard the notice and to rely upon the representation of Schintz, it did so at its own peril, and it can not now throw upon Brugger the consequences of having thus confided in Schintz's assurances. Nor can it be said that the words spoken by Schintz were as much entitled to the reliance of appellant as the written notice upon the paper. Brugger may have relied upon this very indorsement upon the paper for the protection of his rights while the paper was left in Schintz's possession. Inquiry of Brugger, or even of Gmeiner, the maker of the note,

would have disclosed its true ownership.   When appellant did finally inquire of Gmeiner, after it had taken the paper, it at once learned that Brugger and not Schintz was the owner.

We are of opinion that appellant took the note and trust deed with notice of appellee, Brugger's, ownership, and hence that the decree entered by the learned chancellor is right.

The decree is affirmed.